IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CYNTHIA S. DOERING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 6597 |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) | Magistrate Judge Susan E. Cox |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Cynthia S. Doering appeals the Commissioner of Social Security's decision to deny her Social Security disability benefits under Title II of the Social Security Act. We hereby construe plaintiff's memorandum in support of reversing the decision of the Commissioner as a motion. We grant plaintiff's motion [dkt. 15] and deny the Commissioner's motion [dkt. 19]. The Administrative Law Judge's decision is remanded for further proceedings consistent with this opinion.

**STATEMENT**

Plaintiff Cynthia S. Doering appeals the Commissioner of Social Security's decision to deny her Social Security disability benefits under Title II of the Social Security Act.[1] A motion for summary judgment has been filed on behalf of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"). We will construe plaintiff's memorandum in support of reversing the decision of the Commissioner as a motion. For the reasons outlined, we grant plaintiff's motion [dkt. 15] and deny the Commissioner's motion [dkt. 19]. The Administrative Law Judge's decision is remanded for further proceedings consistent with this

---
[1] *See* 42 U.S.C. §§ 404(g), 216(i), 223(d).

1

opinion.

Plaintiff claims that she has been disabled since January 1, 2001 by fibromyalgia, myofascial pain syndrome, a severe iron deficiency, and debilitating neck, shoulder, and back pain.[2] Plaintiff first applied for disability benefits on March 28, 2007. Her application was denied by the Social Security Agency,[3] the initial ALJ,[4] and the Appeals Council.[5] It was remanded to the Agency on April 24, 2012 by the United States District Court for the Northern District of Illinois.[6]

On remand, a new ALJ, Judge Janice M. Bruning, also denied plaintiff benefits.[7] The ALJ determined that plaintiff's fibromyalgia and iron deficiency constituted a severe impairment, but that because plaintiff's testimony regarding the extent and severity of her pain was only "partially credible," she retained the residual functional capacity ("RFC") to perform a light level of physical exertion.[8] The ALJ thus determined that plaintiff was capable of performing her past work as a nutritionist.[9]

In making a determination of plaintiff's credibility, the ALJ relied on plaintiff's own testimony at the hearing, as well as plaintiff's Activities of Daily Living report and plaintiff's Functional Capacity Evaluation.[10] Plaintiff presented opinions from two of her treating physicians: Kirk Heinking, D.O., an osteopathic specialist who treated plaintiff from 2000 to 2001,[11] and James Gruft, M.D., a pain specialist who treated plaintiff from 2000 to 2010.[12] The

---

[2] R. at 85-92; 271-84.
[3] R. at 45-46.
[4] R. at 16-22.
[5] R. at 1-7.
[6] R. at 549-60.
[7] R. at 504-13.
[8] R. at 509.
[9] R. at 512.
[10] R. at 511-12; 128 (Pl.'s Activities of Daily Living); 427-57 (Functional Capacity Report).
[11] R. at 191.
[12] R. at 699.

2

ALJ considered these opinions, as well as the opinions of two of plaintiff's treating chiropractors, and a medical consultant.[13] The ALJ gave none of their opinions any weight.[14] The only medical opinion given any weight by the ALJ was the functional capacity report completed by two State doctors for purposes of plaintiff's disability benefits application; the ALJ gave this report "little weight."[15]

## DISCUSSION

We are concerned by two aspects of the ALJ's opinion: the ALJ's lack of reliance on plaintiff's medical records, and the ALJ's failure to minimally articulate the reasoning for her credibility determination. We are authorized to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). We look to the entire record to determine whether there is substantial evidence supporting the ALJ's ultimate conclusion without making an independent determination on the facts.[16] Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."[17] The ALJ is responsible for providing a clear enough explanation to "permit meaningful appellate review."[18] Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion.[19] A "minimal[] articulat[ion] of her justification" is enough.[20]

We first discuss the ALJ's reliance on only one medical record, the functional capacity report completed by two State doctors. ALJs are cautioned not to "play doctor" by making independent medical decisions "without relying on other medical evidence or authority in the

---

[13] R. at 511-12.
[14] *Id.*
[15] *Id*.
[16] *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *see also Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).
[17] *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).
[18] *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).
[19] *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).
[20] *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

record."[21] Here, the ALJ did not give any weight to either of plaintiff's treating physicians, the state medical consultant, or either of plaintiff's treating chiropractors.[22] The ALJ gave little weight to the functional capacity report because the evaluator reported plaintiff giving "sub-maximal effort" during the physical evaluation.[23] Minimal weight given to only one report appears insufficient, considering the medical record in this case. However, if the ALJ believed there was insufficient evidence to make a decision, she was required to seek expert opinions upon which to build her conclusions.[24] The ALJ did not, however, seek additional opinions from a medical expert.

We are also concerned with the minimal reasoning that the ALJ provided in determining the weight given to the opinions of plaintiff's two treating physicians. It is established precedent that an ALJ "must consider the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion."[25] The ALJ discussed none of these factors aside from the consistency of the treating physicians' opinions.[26] The ALJ determined that both physicians' opinions should be given little weight because of internal inconsistencies and a lack of specificity.[27] While internal inconsistencies are a sound reason for discarding a physician's opinion,[28] the ALJ did not discuss or even mention the treating physicians' relationship with plaintiff, nor did she mention either of the physician's specialties or the tests they performed. While we know that the ALJ reviewed the treating physician's records from her citations, we

---

[21] *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).
[22] R. at 511-12.
[23] *Id*.
[24] *Clifford*, 227 F.3d at 873.
[25] *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006).
[26] R. at 511-12.
[27] *Id*.
[28] *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995).

4

nevertheless cannot consider this to be an adequate discussion of the weight afforded to each opinion. This is especially true here, where the ALJ has given no significant weight to *any* medical opinion.

We next discuss the ALJ's failure to minimally articulate the reasoning for her credibility determination. The ALJ relied on several inconsistencies in plaintiff's testimony in determining her credibility.[29] We address these inconsistencies to determine if the ALJ has minimally articulated her reasons for finding plaintiff to be only partially credible.[30]

First, the ALJ notes plaintiff's testimony that she needed to lay down thirteen hours a day, but that there was no indication that she required any home health assistance.[31] The ALJ does not explain why needing to lie down frequently means that home health care assistance is necessary. Plaintiff admitted that she did not need to do many household chores because she has a cleaning lady, and also testified that she has no difficulty with personal care, such as getting dressed or taking a shower.[32]

Second, Plaintiff testified that she could only walk one block before needing to be picked up. The ALJ held this to be inconsistent with plaintiff's statement in her Functional Capacity Evaluation that she could walk on a treadmill for at least eight minutes.[33] But our review shows that plaintiff's testimony in the hearing was in reference to how she felt in 2005,[34] and her statement in her Functional Capacity Evaluation was given in 2008.[35] Nowhere else in her testimony, beyond her statement regarding how she felt in 2005, does she describe severe trouble

---

[29] R. at 510-12.
[30] *See Berger*, 516 F.3d at 545(noting that an ALJ must "'minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.'")(*quoting Rice v. Barnhart,* 384 F.3d 363, 371 (7th Cir. 2004)).
[31] R. at 511.
[32] R. at 528 (Tr. of Hr'g).
[33] R. at 511.
[34] R. at 525 (Tr. of Hr'g).
[35] R. at 429 (Functional Capacity Evaluation).

walking, and indeed her main complaint seems to be trouble with sitting.[36] Perhaps the most relevant piece of evidence is plaintiff's testimony in her 2009 hearing before ALJ Mondi that "I remember sometimes walking a block and a half and feeling like I needed someone to come pick me up . . . But that doesn't seem to happen anymore."[37] The ALJ does not fully review plaintiff's history but, rather, relies on two different statements from plaintiff to conclude that she is only partially credible. These two statements reference two different time periods and are, thus, not necessarily in opposition.

Third, the ALJ discredits plaintiff when she notes that plaintiff complained that she could not look down without pain, but that she looked down at her attorney during the hearing without demonstrating pain behaviors.[38] But in her testimony, plaintiff states that although bending her head down to cook causes her pain,[39] she is capable of looking down at a reading station for 20 to 30 minutes.[40] The ALJ does not explain or discuss how looking down at an attorney for a few moments without pain is inconsistent with her testimony.

Last, the ALJ states that plaintiff "testified that she did her own laundry and drove," and thus was "more capable of performing work than her testimony indicated."[41] But the Seventh Circuit has repeatedly reprimanded ALJs for this assumption; the ability to perform household daily tasks is not to be taken as inconsistent with statements that plaintiffs are unable to work.[42] In fact, the Seventh Circuit has specifically found that an ability to do laundry does not preclude

---

[36] R. at 522-36.
[37] R. at 35 (Tr. of 2009 Hr'g).
[38] R. at 511, 127 (Pl.'s Activities of Daily Living).
[39] R. at 528 (Tr. of Hr'g).
[40] R. at 532 (Tr. of Hr'g).
[41] R. at 510.
[42] *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (finding that the inability to perceive the differences between work activity and daily chores is "a recurrent, and deplorable, feature of opinions by administrative law judges.").

a finding of disability.[43] Furthermore, plaintiff testified at the hearing that while she could drive short distances, she could not even travel the thirty miles to her mother's house because "[she would] have to sit in the car too long."[44] The ALJ, however, does not mention this.

We require a more thorough explanation of the medical evidence and the weight it was afforded. We are also troubled by the explanations given regarding plaintiff's credibility. For these reasons, plaintiff's motion is granted and the Commissioner's motion for summary judgment is denied. The case is remanded for further proceedings consistent with this opinion.

**ENTER:**
**DATED:** May 8, 2015

Susan E. Cox
United States Magistrate Judge

---

[43] *Hughes v. Astrue*, 705 F.3d 276, 279 (7th Cir. 2013) ("The applicant cannot afford to hire a laundress, so she must do the laundry herself, painful though that may be."); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (finding that activities such as helping children prepare for school, doing laundry, and preparing dinner are "not of a sort that necessarily undermines or contradicts a claim of disabling pain.").
[44] R. at 526.